IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SUSSMAN SHANK, LLP, an Oregon limited liability partnership, | No. 3:15-cv-02148-HZ |
| Plaintiff, | |
| v. | |
| CITIZENS OF HUMANITY, LLC, a Delaware limited liability company; JEROME DAHAN; CM LAUNDRY, LLC, a Delaware limited liability company, and DOES 1 through 10, | OPINION & ORDER |
| Defendants. | |

Peter R. Mersereau
Blake H. Fry
MERSEREAU SHANNON LLP
One S.W. Columbia Street, Suite 1600
Portland, Oregon 97258-2089

     Attorneys for Plaintiff

Bonnie Richardson
Zach Allen
FOLAWN ALTERMAN & RICHARDSON LLP
805 S.W. Broadway, Suite 470
Portland, Oregon 97205

1 - OPINION & ORDER

Peter W. Ross
Keith J. Wesley
Corbin K. Barthold
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Sussman Shank LLP, a Portland law firm, brings this breach of contract action against Defendants Citizens of Humanity, LLC ("COH"), Jerome Dahan, CM Laundry, LLC, and unidentified Doe Defendants.  Dahan is alleged to be a member of COH and COH is alleged to be a member of CM Laundry.  Compl. ¶¶ 3, 5.  Gary Freedman, outside general counsel to COH, hired Plaintiff to perform legal work for COH.  Id. ¶¶ 10, 13-15.  Freedman also hired Plaintiff to represent Dahan and CM Laundry in connection with various lawsuits.  Id. at ¶¶ 16-17.  Plaintiff alleges that COH breached the contract to pay for the legal services provided.  Id. ¶¶ 26-30.  Additionally, Plaintiff brings breach of implied-in-fact, account stated, and quantum meruit claims against COH.  Id. ¶¶ 31-43.  Plaintiff brings the same claims against Dahan.  Id. ¶¶ 44-61.  The same claims, except for a breach of implied-in-fact contract claim, are brought against CM Laundry.  Id. ¶¶ 62-73.

      Defendants move to dismiss.  Dahan and CM Laundry move to dismiss for lack of personal jurisdiction.  CM Laundry also moves to dismiss for lack of subject matter jurisdiction.  COH moves to dismiss for improper venue, or alternatively, to transfer venue to the Central District of California.  I grant Dahan's and CM Laundry's motions to dismiss.  I deny COH's motion to dismiss but grant its alternative motion to transfer.

2 - OPINION & ORDER

BACKGROUND

Freedman used to work with John Schwimmer, an attorney who now works for Plaintiff, when Schwimmer practiced law in California.  Freedman Decl. ¶ 3; ECF 28; Schwimmer Decl. ¶ 2; ECF 36.  According to Schwimmer, the two lawyers worked as co-counsel on several occasions and became close friends.  Schwimmer Decl. ¶ 2.  About one year before Schwimmer moved to Oregon in 2004, he and Freedman had little communication because "of disputes with the Los Angeles firm" that had nothing to do with Schwimmer.  Id.

Freedman contends that just before Schwimmer moved to Oregon, Schwimmer invited Freedman to lunch and asked if Freedman would like to work with him again.  Freedman Decl. ¶ 3.  Freedman states that Schwimmer reported he would be happy to travel to California to work on cases.  Id.  As a result, Freedman hired Schwimmer to represent COH in multiple lawsuits in California.  Id. ¶ 4.  Schwimmer's location, and the location of Plaintiff, were not relevant to COH's hiring decision.  Id.  COH's principal place of business is in California.  Id. ¶ 2.  None of its members are citizens of Oregon.  Id.  COH designs, makes, and sells designer jeans.  Id.  Although it sells those jeans in Oregon, it has no office "or any other non-transient contacts with" Oregon.  Id.

Schwimmer has a different recollection of the meeting with Freedman.  He asserts that Freedman contacted him, not the other way around, and they met over breakfast.  Schwimmer Decl. ¶ 4.  Schwimmer states that he and Freedman did not discuss the possibility of Schwimmer handling any California litigation with Freedman or his clients and Schwimmer did not solicit Freedman for business.  Id.  Schwimmer agreed to meet with Freedman in order to reconnect and revive their personal relationship.  Id.

3 - OPINION & ORDER

At some point, after Schwimmer moved to Oregon, COH signed a representation agreement with Plaintiff.  Freedman Decl. ¶ 4.  COH hired Schwimmer to work on one lawsuit in Oregon.  Id. ¶ 5.  But, Freedman states, this lawsuit concluded long ago and is not the subject of Plaintiff's present action.  Id.  According to Schwimmer, the Oregon lawsuit was brought by COH's predecessor company D.A.D.S. Denim, and was a copyright infringement case filed in the District of Oregon.  Schwimmer Decl. ¶ 6.  Dahan was President of D.A.D.S Denim and its founder.  Id. ¶ 7.  He owned a large interest in the company.  Id.  Schwimmer does not dispute Freedman's representation that the D.A.D.S. Denim litigation is not one of the lawsuits at issue in this case.

Dahan lives in Santa Monica, California.  Dahan Decl. ¶ 2; ECF 23.  He asserts he has never been to Oregon.  Id.  He has no contacts with Oregon that connect him to Plaintiff's claims against him in this lawsuit.  Id.  On Freedman's advice, he hired Plaintiff to represent him in an action against JP Morgan Chase Bank, in Los Angeles Superior Court.  Id. ¶ 3.  Plaintiff's location was irrelevant to Dahan's decision to hire Plaintiff.  Id.

Schwimmer states that contrary to Dahan's representation, Dahan did come to Oregon on a private jet with Freedman for a mediation in the D.A.D.S Denim copyright litigation.  Schwimmer Decl. ¶ 9.  The case settled that day and Dahan returned to California.  Id.

CM Laundry's principal place of business is in California.  Freedman Decl. ¶ 2; ECF 26.  None of its members are citizens of or based in Oregon.  Id.  CM Laundry's only customer is COH.  Id.  CM Laundry conducts no business in Oregon.  Id.  No representative of CM Laundry ever traveled to Oregon for the lawsuit at issue in this action.  Id.  CM Laundry did not sign or negotiate any agreement with Plaintiff while in Oregon.  Id.

4 - OPINION & ORDER

As regards the relevant cases at issue in this lawsuit, Schwimmer states that Freedman first contacted him to ask if he and Plaintiff would be willing to work with him on the respective cases. Schwimmer Decl. ¶ 11. The legal work was performed between 2012 and 2014. Id. ¶ 12. The legal work performed by Plaintiff in Oregon included legal research and analysis; review of discovery materials and factual analysis of written materials; drafting of outgoing communications and review of incoming communications; preparation for depositions, hearings, and trial; and drafting of case-related pleadings. Id. Schwimmer also attended several hearings in the matters by telephone from Plaintiff's office in Portland. Id. The vast majority of the legal work was performed in Oregon. Id.

According to Plaintiff's chief operating officer Steven Seguin, the payments for the legal matters at issue were sent from California to Oregon by check or credit card. Seguin Decl. ¶ 3. Many checks were from a checking account from the Law Offices of Gary Freedman. Id. Some checks in the Dahan matter were paid from a Jerome Dahan checking account. Id.

## STANDARDS

### I. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on the ground that the court lacks personal jurisdiction. Plaintiff has the burden of showing personal jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the nonresident defendant. Western Helicopters, Inc. v. Rogerson Aircraft Corp., 715 F. Supp. 1486, 1489 (D. Or. 1989); see also Boschetto, 539 F.3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.").

Oregon Rule of Civil Procedure 4 governs personal jurisdiction issues in Oregon. Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due process, Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (citing Or. R. Civ. P 4L), cert. denied, 136 S. Ct. 915 (2016), I may proceed directly to the federal due process analysis.  See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long arm statute reaches as far as the Due Process Clause, court need only analyze whether the exercise of jurisdiction complies with due process); see also Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

To comport with due process, the nonresident defendant must "'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Ranza, 793 F.3d at 1068 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction."  Id.

When the motion to dismiss is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Id. (internal quotation marks omitted).  However, the "plaintiff may not simply rest on the bare allegations of the complaint."  Id. (internal quotation marks and brackets omitted).  Still, "uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  Id. (internal

6 - OPINION & ORDER

quotation marks and brackets omitted).

II.  Venue

    A.  Improper Venue

    Under Rule 12(b)(3), a defendant may move for dismissal based on improper venue.  Fed. R. Civ. P. 12(b)(3).  "The plaintiff bears the burden of showing that venue is proper."  Adidas Am., Inc. v. Cougar Sport, Inc., No. 3:15-cv-01856-SI, 2016 WL 1054581, at *1 (D. Or. Mar. 14, 2016) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)).  In resolving a Rule 12(b)(3) motion, "the Court need not accept the pleadings as true, and may consider facts outside of the pleadings."  Kwiecinski v. Medi-Tech Int'l Corp., No. 3:14-cv-01512-BR, 2015 WL 3905224, at *2 (D. Or. June 25, 2015) (internal quotation marks omitted); see also Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996) ("Analysis under Rule 12(b)(3), . . . , permits the district court to consider facts outside of the pleadings").  If venue is improper, the court may dismiss the action or, "if it be in the interest of justice," may transfer the case "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

    B.  Transfer

    Even if venue is proper in this District, the Court may transfer the case to a different district under 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]").  The decision whether to transfer venue under § 1404 lies in the discretion of the district court.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (under § 1404(a), "the district court has discretion to adjudicate motions for transfer

according to an individualized, case-by-case consideration of convenience") (internal quotation marks omitted).

DISCUSSION

I. Personal Jurisdiction Motions

Plaintiff concedes that this Court does not have general jurisdiction over Dahan or CM Laundry. Pl.'s Opp'n to Dahan's Mot. 7; ECF 32; Pl.'s Opp'n to CM Laundry's Mot. 4; ECF 33 (incorporating arguments made in response to Dahan's motion). Thus, I analyze only whether there is specific jurisdiction over these two Defendants.

The Ninth Circuit uses a three-part test to assess specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks omitted).

Plaintiff bears the burden on the first two parts of the test. Id. If the plaintiff establishes both prongs one and two, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." Id. (internal quotation marks omitted).

In contract cases, the court generally applies a "purposeful availment" analysis, asking whether the defendant has "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (internal

8 - OPINION & ORDER

quotation marks and brackets omitted).  The purposeful availment requirement "'ensures that a defendant will not be haled into a jurisdiction solely as result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party [or] a third person.'"  Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 1985)).

A.  Dahan

For the purposes of this motion, I assume that Freedman reached out to Schwimmer to solicit his legal services.  I also assume that Dahan traveled to Oregon to participate in the mediation in the D.A.D.S. Denim copyright case.  The engagement letter pertaining to that case was generated by Schwimmer in Oregon and sent to California on or about August 17, 2005. Schwimmer Decl. Ex. 1; ECF 36-1.  Dahan signed the letter in California.  Id.

In February 2012, Dahan retained Plaintiff to represent him in a matter against JP Morgan Chase.  Id. Ex. 4; ECF 36-4.  Schwimmer sent an engagement letter to Dahan in California on February 27, 2012 confirming the representation and enclosing the Terms of Representation.  Id. The JP Morgan Chase case was litigated in Los Angeles Superior Court.  Dahan Decl. ¶ 3.

Dahan argues that he never purposefully availed himself of the privilege of conducting business in the forum.  While he signed two contracts with an Oregon entity, he did not sign them in Oregon and as to one, the purpose of the contract was to initiate litigation in California. In regard to that case, Dahan never traveled to Oregon and conducted no activities in Oregon. Plaintiff's Oregon location was not relevant to Dahan's decision to hire Plaintiff.  Id.

Plaintiff argues that Dahan purposefully availed himself of the privilege of conducting activities in Oregon by soliciting, through Freedman, Plaintiff's business and by sending payment

9 - OPINION & ORDER

for legal services to Oregon, either directly or through Freedman.  Plaintiff argues that Dahan and

Freedman cannot "seriously contend" ignorance of the fact that hiring Plaintiff would result in

the performance of a significant amount of legal work in Oregon.  Pl.'s Opp'n to Dahan's Mot. 9.

Essentially, Plaintiff contends that because the contract with Plaintiff was "formed in Oregon"

and the subject matter of the contract called for work known to the parties to be substantially

performed in Oregon, the purposeful availment prong is satisfied.

I disagree.  The cases make clear that in analyzing purposeful availment, the focus is on

the *defendant's* actions *in* the forum state.  E.g., Schwarzenegger v. Fred Martin Motor Co., 374

F.3d 797, 802 (9th Cir. 2004).  The court looks to whether the *defendant* has performed some

type of affirmative conduct promoting the transaction of business in the forum.  Doe, 248 F.3d at

924; see also Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988) (the

"[p]urposeful availment analysis examines whether the defendant's contacts with the forum are

attributable to his own actions or are solely the actions of the plaintiff").  Here, performance of

legal services in Oregon is conduct attributable to Plaintiff, not to Dahan.

Additionally, a contract alone does not support a finding of purposeful availment.  Burger

King, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state

party *alone* can automatically establish sufficient minimum contacts in the other party's home

forum, we believe the answer clearly is that it cannot.").  That Plaintiff drafted the engagement

letters on its letterhead in Oregon does not, contrary to Plaintiff's suggestion, demonstrate that

Dahan performed any conduct in Oregon.  And that Dahan entered into contracts for legal

services with an Oregon entity does not by itself establish purposeful availment in Oregon.

Moreover, contrary to Plaintiff's argument, the contracts were not "formed" in Oregon given that

10 - OPINION & ORDER

they were drafted in Oregon but were signed by Dahan in California.

Recently, I examined Ninth Circuit cases regarding whether this Court could constitutionally assert specific personal jurisdiction over two nonresident defendants in a case with breach of contract and quantum meruit claims.  Wellpartner, Inc. v. DeLeon Pharmacy, Inc., No 3:15-cv-01577-HZ, 2015 WL 7568591 (D. Or. Nov. 24, 2015).  First, I discussed McGlinchy v. Shell Chemical Co., 845 F.2d 802 (9th Cir. 1988), where the court "found no purposeful availment of California law [even though] the plaintiff and defendant entered into a contract that was executed by the plaintiff in California and the majority of plaintiff's performance under the contract occurred in California." Wellpartner, 2015 WL 7568591, at *4.  The contract in McGlinchy had not been negotiated in California even though it was signed there.  Id. Importantly, even though the plaintiff had alleged that it performed the vast majority of its work under the contract in California, that was only "'unilateral activity' . . . [which] was insufficient to confer personal jurisdiction over the defendant." Id. (quoting McGlinchy, 845 F.2d at 816).

Second, I discussed the recent Ninth Circuit case in Picot where the court ruled that California lacked personal jurisdiction over a resident of Michigan in a contract dispute.  Id. (citing Picot, 780 F.3d at 1212).  I noted that the Ninth Circuit rejected the plaintiff's argument that a substantial connection existed between the defendant and California because the plaintiff fulfilled his obligations under the agreement by seeking investors and buyers in California.  Id.  I explained that the Picot court stressed that adopting the plaintiff's argument would "'allow a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.'" Id. (quoting Picot, 780 F.3d at 1213); see also Picot, 780 F.3d at 1213 ("the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of

jurisdiction over another party to the contract").

Third, I discussed <u>Roth v. Garcia Marquez</u>, 942 F.2d 617 (9th Cir. 1991), a case relied on by Plaintiff here.  <u>Wellpartner</u>, 2015 WL 7568591, at *5.  The facts in <u>Roth</u> justified the exercise of personal jurisdiction even though the plaintiff had pursued the defendants who had minimal physical presence in the forum and even though the contract had been negotiated and signed outside the forum.  <u>Id.</u>  But, the future consequences of the contract required most of the contract work to be performed in the forum, generating business within the forum.  <u>Id.</u> (discussing <u>Roth</u>).  In <u>Wellpartner</u>, I noted that <u>Roth</u> "appear[ed] to dictate a finding" for the <u>Wellpartner</u> plaintiff on the issue of purposeful availment.  But then I explained:

> [H]owever, a closer examination renders <u>Roth</u> distinguishable. It is important to note that it was not dispositive in <u>Roth</u> that a significant portion of the performance of the contract would occur in the forum state. Rather, the Court was persuaded by the fact that the parties' performance of the contract was directed at businesses and residents of the forum state, and performance of the contract (the editing, production work, and advertising) would have promoted the transaction of business within the forum state.  <u>See also</u> <u>Gray [& Co. v. Firstenberg Mach. Co.]</u>, 913 F.2d [758,] 760 [(9th Cir. 1990)] ("Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state.").  As the <u>Picot</u> decision explains, the mere fact that a contract calls for the plaintiff to perform its contractual obligations in the forum state is not, by itself, enough to justify the exercise of specific jurisdiction over the out-of-state defendant.

<u>Id.</u>

For the reasons explained in <u>Wellpartner</u>, the instant case, like <u>Roth</u>, is distinguishable and <u>Picot</u> is the more closely analogous precedent.  Even assuming that trial lawyers perform a substantial amount of work in their offices researching, writing, thinking, and the like, Dahan hired Plaintiff in 2012 to conduct litigation in California.  Presumably, that means pleadings were "filed" (even electronically), in California, hearings were conducted in California, depositions, or

at least some of them, occurred in California. Trial would have occurred in California. Schwimmer's location in Oregon was irrelevant. The researching, writing, and thinking parts of his legal services could have been performed anywhere. See Picot, 780 F3.d at 1213 (noting that the defendant's "two trips to California hold no special place in his performance under the agreement as a whole"). In contrast in Roth, the film industry is concentrated in California and the performance of that contract could not likely have been performed in a different location. Moreover, the performance of that contract promoted a substantial amount of business in California. The same cannot be said of a legal services contract for representation in a California court. Plaintiff and only Plaintiff benefitted from the 2012 contract with little or no effect on other activities in Oregon.

Additionally, the D.A.D.S. Denim case not is not especially relevant to the purposeful availment analysis. The contract for legal services in that case was in 2005 and is not part of the several contracts at issue in this lawsuit that were entered into between 2012 and 2014. And, that contract was actually between a predecessor to COH (which does not challenge personal jurisdiction) and Plaintiff. Although the contract was signed by Dahan and he traveled to Oregon on one occasion to participate in the mediation, he was not a party to the contract personally. Accordingly, the facts regarding that contract fail to show that Dahan purposefully availed himself of the privilege of conducting business in Oregon. See Picot, 780 F.3d at 1213 ("a defendant's transitory presence will support jurisdiction only if it was meaningful enough to 'create a substantial connection' with the forum State") (quoting Burger King, 471 U.S. at 475).

In summary, as to Dahan, the legal services agreements were drafted in Oregon but executed in California with no evidence in the record as to where they were actually negotiated.

Although Freedman may have solicited Schwimmer's legal services, and Dahan sent payment for those services to Oregon from California, the fact of entering a contract with a party in Oregon and sending payment to Oregon do not by themselves establish purposeful availment.  See Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) (use of the mails "simply do[es] not qualify as purposeful activity invoking the benefits and protection" of the forum) (internal quotation marks and brackets omitted).  Freedman's communications with Schwimmer and Plaintiff on behalf of Dahan also do not establish purposeful availment under Peterson or Roth which stated that calls and emails into the forum typically "do not qualify as a purposeful activity" triggering jurisdiction.  Roth, 942 F.2d at 622.  The performance by Schwimmer of some of the legal services in Oregon is insufficient because the focus is on the defendant's conduct in the forum, not where the plaintiff's activities occur.  In this case, Schwimmer's and Plaintiff's location in Oregon is "fortuitous" and irrelevant.  The facts fail to establish purposeful availment by Dahan of the privilege of conducting business in Oregon.

Even if I were to find purposeful availment, however, I would still conclude that the Court lacks specific jurisdiction over Dahan.  In this lawsuit, Plaintiff seeks fees and costs from Dahan for time Plaintiff spent litigating the California lawsuit against JP Morgan Chase.  Compl. ¶¶ 25(b), 46.  Other than the act of hiring an Oregon entity to represent him in that lawsuit, and making some payments to Oregon related to that representation, there is nothing to establish that the claim for non-payment arises out of Dahan's few forum-related activities.

Finally, even if the second prong of the analysis is satisfied, the exercise of jurisdiction over Dahan in this case is not reasonable under the third prong of the analysis.  The degree of Dahan's "purposeful interjection into the forum state's affairs" is negligible.  Harris Rutsky, 328

F.3d at 1132 (setting forth seven factors for analyzing the reasonableness of the exercise of jurisdiction).  Dahan states that it would be a burden for him to defend the case in Oregon because his "business and endeavors keep [him] fully occupied in California."  Dahan Decl. ¶ 4. Both California and Oregon have an interest in adjudicating the dispute, although California's interest is greater given that the legal services at issue in this lawsuit were in connection with litigation in California and in California courts which have an interest in ensuring that lawyers appearing there are paid.  I agree with Defendant that while Schwimmer is located in Portland, by agreeing to represent clients in connection with California litigation in California, he cannot assert that litigating this case in California will be unreasonably burdensome.  Other than Schwimmer, the other relevant witnesses reside in California.  While Oregon is the more important forum for Plaintiff, an alternative forum exists in California.  On balance, when all the factors are considered, the exercise of jurisdiction over Dahan does not comport with "fair play and substantial justice."  Dahan's motion to dismiss is granted.

B.  CM Laundry

CM Laundry never engaged Plaintiff to represent it in any litigation other than in California.  Compl. ¶ 18; Schwimmer Decl. ¶¶ 10(d), (e).  Engagement letters originated in Oregon and were sent to CM Laundry in care of Freedman, in California.  Schwimmer Decl. Exs. 5, 6; ECF 36-5, 36-6.

CM Laundry argues that it never purposefully availed itself of the benefits of Oregon, it has no contacts with Oregon that are related to or arise out of the claim asserted against it, and the exercise of jurisdiction over it would be unreasonable.  In response to the motion, Plaintiff makes no argument specific to CM Laundry and instead incorporates and relies on the arguments

made in opposing Dahan's motion which "are equally applicable to CM Laundry's motion to dismiss." Pl.'s Opp'n to CM Laundry Mot. 4. Given that CM Laundry has even less of a connection to Oregon than Dahan and given that Plaintiff's arguments in support of jurisdiction were unavailing as to Dahan, they are similarly unavailing here. For the reasons explained above, I agree with Defendant that the exercise of jurisdiction over CM Laundry by this Court does not comport with due process. I grant CM Laundry's motion to dismiss.[1]

II. COH's Venue Motion

Under 28 U.S.C. § 1391, venue for civil cases is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). In response to the motion, Plaintiff argues that venue is proper under subsection (2). Accordingly, I limit my discussion to that subsection.

In contract actions, the claim "generally arises for § 1391(b)(2) purposes in the place of intended performance." Ahead, LLC v. KASC, Inc., No. C13-0187JLR, 2013 WL 1747765, at *7 (W.D. Wash. Apr. 23, 2013) (citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986) ("the spirit of [the venue statute] is better served in this case if venue for

---

[1] I do not consider CM Laundry's alternative argument for dismissal based on the lack of subject matter jurisdiction, which CM Laundry appears to have abandoned in its Reply Memorandum.

16 - OPINION & ORDER

a claim based on breach of contract be the place of intended performance rather than the place of repudiation").  As the Decker Coal court noted, because "place of performance is determined at the inception of the contract," the parties "can anticipate where they may be sued."  Decker Coal, 805 F.2d at 842.

In this case, the contracts between Plaintiff and COH were executed in Oregon and California.  Schwimmer Decl. Exs. 2, 3; ECF 36-2, 36-3 (engagement letters dated 2012 and 2014 sent to COH in California from Schwimmer).  All of the cases in which Plaintiff represented COH were pending in California courts.  At the time the contracts were executed, Schwimmer and Plaintiff knew that they were representing a California client in California courts.  Thus, they anticipated that at least some of their services would be performed in California.  At the same time, however, COH knew that Plaintiff and Schwimmer were located in Oregon.  Thus, COH knew that at least some of the legal services would be performed in Oregon.  As a result, because performance was reasonably expected to occur in both states, this is one of those cases where venue is proper in more than one district.  Ahead, 2013 WL 1747765, at *7 (noting that the venue statute is generally interpreted to permit venue in a number of possible districts) (citing Decker Coal, 805 F.2d at 842).

Nonetheless, I agree with Defendant that the claims against COH should be transferred under 28 U.S.C. § 1404(a).  In considering a § 1404(a) motion, the court examines both private and public interest factors affecting the convenience of the forum.  Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 699 (9th Cir. 1995); Decker Coal, 805 F.2d at 843.  Private factors

include ease of access to sources of proof; compulsory process to obtain the

17 - OPINION & ORDER

attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial.

* * *

[Public] factors include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems.

Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1093, 1094 (9th Cir. 1998); see also Jones, 211 F.3d at 498-99 (listing several relevant factors the court should consider, including "where the relevant agreements were negotiated and executed").  Generally, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  Decker Coal, 805 F.2d at 843.

In this case, with documentary evidence easily accessible to all parties, the "ease of access to sources of proof" factor primarily concerns witnesses.  Schwimmer, Freedman, and Dahan are likely to be the main witnesses.  Two are located in California and one in Oregon.  Freedman is a non-party.  The record does not establish whether Freedman would be unwilling to testify but if he is, he is beyond the subpoena power of this Court.  Fed. R. Civ. P. 45(c)(1).  Other witnesses, whether they be unwilling or friendly, are unidentified.  Thus, I cannot assess the ability to compel unwilling witnesses or the cost of travel of friendly witnesses.

Given that the contracts at issue were drafted in Oregon but executed by COH in California, the place of negotiation and execution is not a factor.  The fact that the drafting and execution occurred in two states means that citizens of either state could consider this a "local" controversy and thus, there is no greater imposition of jury duty on the people of California than

in Oregon and the people of both states have an interest in resolving the controversy.  There is no choice of law provision in the contracts and it is unclear at this stage which state's law will apply or if there are any conflicts of laws issues..

At this point, the factors do not overwhelmingly compel a change to Plaintiff's choice of forum.  But, two other factors tip the balance in favor of transferring this case to California. First, if the claim against COH remains in Oregon, and assuming Plaintiff files claims against the other two Defendants in California, the parties will litigate two separate cases given that I dismiss Dahan and CM Laundry for lack of personal jurisdiction.  This will significantly increase the cost of litigation.  Second, with the COH claim in Oregon and the claims against the other Defendants in California, there is a serious risk of inconsistent results based on the same or similar facts.  Such a result would be contrary to the interests of justice.  Because only Plaintiff's choice of forum weighs distinctly in favor of Oregon, other factors are either neutral or weigh somewhat in favor of California, and the cost and interest of justice factors, which are significant, weigh heavily in favor of California, I conclude that the more appropriate venue for the remaining claim against COH is the Central District of California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19 - OPINION & ORDER

CONCLUSION

Dahan's and CM Laundry's motions to dismiss [22, 25] are granted.  COH's motion to dismiss [27] is denied, but its alternative motion to transfer venue [27] is granted.  Pursuant to this Order, the claim against COH, as well as the pending claims against the Doe Defendants, are transferred under 28 U.S.C. § 1404 to the Central District of California.  Because there is no just reason for delay, a separate Judgment under Federal Rule of Civil Procedure 54(b) will be issued as to the claims against Dahan and CM Laundry.  .

IT IS SO ORDERED.

Dated this ____18____ day of ____APRIL____, 2016

Marco A. Hernandez
United States District Judge